Dylan McFarland
W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, MT 59802
Email:  mcfarland@knightnicastro.com
        duerk@knightnicastro.com
Telephone: (406) 206-5747
Facsimile: (816) 396-6233
*Attorneys for Plaintiff Bennett K. MacIntyre*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| **BENNETT K. MACINTYRE**,<br><br>Plaintiff,<br><br>v.<br><br>**CARROLL COLLEGE**,<br><br>Defendant. | Cause No. CV-19-42-H-BMM<br><br>**PLAINTIFF BENNETT K. MACINTYRE'S NOTICE OF CITATIONS** |

COMES NOW Plaintiff Bennett K. MacIntyre, by and through his attorneys Knight Nicastro MacKay LLC and hereby identifies citations to the record regarding Mr. Gross's decision to terminate Mr. MacIntyre's employment pursuant to the Court's request during the hearing on May 15, 2023.

Affidavit of Marcia Davenport Doc. 54, Tab 19 Excerpts of Lori Peterson Deposition, 23:11-24:13.

```
11     Q.  All right.  And when athletics wants to
12  make cuts in their budget, who's in charge of that?
13     A.  Again, it's very much a shared governance
14  process.  Charlie Gross is the athletic director,
15  brings forth the recommendations.  As a matter of
16  practice, most directors or vice presidents of areas
17  work with their divisions to come up with solutions
18  that are brought forward.  I don't know if that was
19  the case with athletics; how they discuss budgets.
20         There's always a budget -- not always.
21  There's -- frequently, when there are additional
22  resources, a budget call goes out to the community.
23  We have not been in the position to have additional
24  resources.  So our budget process is very
25  transparent in terms of the community knowing
                                              Page 24
 1  that -- where our budget situation resides.
 2     Q.  All right.  And so as far as, I guess,
 3  what Mr. Gross's determinations were for what
 4  programs or areas or funds to cut, that's a question
 5  for him, is that fair to say?
 6     A.  Yeah, that's fair to say.  Like I said,
 7  all sorts of things were brought forward.  Personnel
 8  is the last place we go at Carroll.  But we were in,
 9  what I would call, a place of trying to find
10  solutions with stopgap measures.  We needed to find
11  permanent reductions to build a business model
12  that's sustainable for the future of Carroll
13  College.
```

Affidavit of Marcia Davenport Doc. 54, Tab 4 Excerpts of Charlie Gross Deposition, 128:12-129:16.

```
12     Q.  All right.  So in terms of your decision
13  to reduce the position from a full-time coaching
14  position to a stipend position, what were the
15  factors that went into that decision?
16     A.  Well, like I said, it was a financial
17  decision.  And then I looked at how the position was
18  staffed within the conference.  I looked at how do
19  we service the student athletes and minimize the
20  impact of their experience, and that had been done
21  previously with the golf position in a manner that
22  provided positive experiences for the students,
23  highly competitive experiences for the students, and
24  recruited numbers that were sufficient to sustain
25  viability to the program.
```

```
                                                          Page 129
 1      I looked at the position of how could you
 2   meet the coaching requirements to fulfill the needs
 3   that the students athletes have, and there were two
 4   positions that seemed to fit that model and that was
 5   both golf and cross-country.  And those were the
 6   strategies.
 7      And there was a threshold of dollars that
 8   we needed to get to and try to position them at a
 9   salary -- a stipend salary that was fair to
10   compensate them for the time of having to serve over
11   multiple seasons.
12   Q.  Were there any other issues, factors, or
13   information that you consulted when making that
14   decision?
15   A.  No.  It was those -- those that I think I
16   said.
```

Affidavit of Dylan McFarland Doc. 73, Exhibit 36 Excerpts of Bennett MacIntyre Deposition, 11:2-22, also included in Statement of Disputed Facts Doc. 72 ¶187.

```
 2   Q.  And so how do you get fired by Carroll
 3   College when your contract just expired on
 4   June 30th, 2018?
 5   A.  Well, he told me I was being terminated,
 6   I went and did an exit interview, they said I could
 7   go on unemployment benefits, and that we did the
 8   process of the termination.
 9   Q.  And who told you that -- who used the
10   word "you're terminated" -- I mean, the phrase
11   "you're terminated"?
12   A.  That would be Charlie Gross, the athletic
13   director.
14   Q.  And those were the words he used?
15   A.  Correct.
16   Q.  When did Charlie Gross tell you you were
17   terminated?
18   A.  I met with him one, two -- I believe two
19   times in my office and then one time with Renee
20   McMahon, the Title IX coordinator for the college,
21   in his office, and I can't remember the exact time,
22   but I believe it was the first time.
```

DATED this 16TH day of May, 2023.

    KNIGHT NICASTRO MACKAY, LLC

    By: */s/ Dylan M. McFarland*
    Dylan M. McFarland
    KNIGHT NICASTRO MACKAY, LLC
    283 W. Front Street, Suite 203
    Missoula, MT 59802
    Telephone: (406) 206-5747
    mcfarland@knightnicastro.com
    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the following counsel of record, by the means designated below, this 16TH day of May 2023:

| | |
|---|---|
| Marcia Davenport<br>John Semmens<br>CROWLEY FLECK PLLP<br>P.O. Box 797<br>Helena, MT 59624-0797<br>*Attorneys for Defendant Carroll College* | [ ] U.S. Mail<br>[ ] Hand-Delivery<br>[X] ECF Electronic Filing |

KNIGHT NICASTRO MACKAY, LLC

By: */s/ Dylan M. McFarland*